## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **VINCENT HSIA,** | **Civil Action No. 14-2372 (SDW)** |
| **Petitioner,** | |
| **v.** | **OPINION** |
| **UNITED STATES OF AMERICA,** | |
| **Respondent.** | |

**WIGENTON**, District Judge:

Presently before the Court is the  amended motion of Vincent Hsia ("Petitioner") to vacate, set aside, or correct his sentence brought pursuant to 28 U.S.C. § 2255 (ECF No 12).  Following an evidentiary hearing in this matter (ECF No. 24), Petitioner filed a brief in support of his amended motion to vacate (ECF No. 25).  The Government responded to that brief (ECF No. 26), and Petitioner filed a reply.  (ECF No. 28).  For the following reasons, this Court will grant the amended motion to vacate and will resentence Petitioner accordingly.

## I.  BACKGROUND

On direct appeal, the Third Circuit provided the following basic summary of Petitioner's underlying criminal matter:

> [Petitioner] pleaded guilty to one count of conspiring to distribute oxycodone and four counts of filing false tax returns and was sentenced to 300 months' imprisonment. . . .
>
> Beginning in 2007, [Petitioner], a pharmacist in Edison, New Jersey, began filling fraudulent prescriptions for oxycodone to his co-conspirators for their own use and street-level distribution. Knowledgeable about the relevant regulations, [Petitioner] told the co-conspirators how to fill out prescriptions to maximize distribution without being caught.  He also notified the co-

1

conspirators when the pharmacy was being audited or scrutinized, and instructed them about varying prescription pads and timing their visits to the pharmacy.  Over the course of the conspiracy, [Petitioner] illegally distributed 261,698 high-dosage oxycodone pills.  The new business proved profitable, but [Petitioner] failed to report these earnings on either his own or the pharmacy's tax returns, resulting in a criminal tax loss of nearly $400,000.

On September 7, 2011, [Petitioner] pleaded guilty to one count of conspiracy to distribute oxycodone in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C), and four counts of tax fraud in violation of 26 U.S.C. § 7206(1).  In a written application to plead guilty, he acknowledged the maximum penalty for the conspiracy count to be 20 years' imprisonment, but did not mention the maximum penalties for the tax counts.  The District Court did not address the maximum penalties at the plea hearing.

The Presentence Report ("PSR") recommended a four-level enhancement pursuant to U.S.S.G. § 3B1.1(c) for [Petitioner]'s supervisory role in the conspiracy, and a two-level enhancement pursuant to § 3B1.3 for abuse of trust, resulting in a total offense level of 42.  With a Criminal History Category of III, [Petitioner]'s Guidelines range was 324–384 months' imprisonment.  His sentencing memorandum acknowledged that he faced a statutory maximum of "20 years on the drug charge, in addition to 3 years on each tax count," and that the District Court "has the authority to properly sentence [him] to consecutive terms."

The District Court adopted the PSR with the exception of applying only a two-level enhancement for [Petitioner]'s supervisory role in the conspiracy.  The Court calculated [Petitioner]'s offense level to be 39, resulting in a Guidelines range of 262 to 327 months, and considered and rejected his departure and variance requests.  After review of the relevant § 3553(a) factors, the Court imposed a within-Guidelines sentence of 300 months' imprisonment, comprised of 240 months on the conspiracy count, 20 months on two of the tax counts, and 10 months on the two others, to run consecutively.  Later that day, the Court entered a final order of forfeiture but did not include it in the judgment.

*United States v. Hsia*, 527 F. App'x 176, 177-78 (3d Cir.), *cert. denied*, --- U.S. ---, 134 S. Ct. 343

(2013).

2

Following his sentencing, Petitioner appealed, arguing *inter alia* that his sentence was unreasonable and that this Court had erred in applying sentencing enhancements based upon Petitioner's supervisory role in the drug distribution conspiracy and that the Court had erred in filing a forfeiture order separate from the judgment of conviction. *Id.* On May 31, 2013, the Third Circuit affirmed Petitioner's judgment and sentence, finding the sentenced imposed reasonable and any other errors at worst harmless, but remanded the matter to this Court to correct the clerical error which had resulted in the forfeiture being separate from the judgment of conviction. *Id.* at 180-83. Petitioner ultimately filed a petition for certiorari, which the Supreme Court denied on October 7, 2013. 134 S. Ct. at 343.

Petitioner thereafter filed his motion to vacate sentence on or about April 11, 2014. (ECF No. 1). Following an order to answer, the Government filed a response on February 26, 2015, in which it requested an evidentiary hearing to resolve Petitioner's claim. (ECF No. 11). After receiving the response, Petitioner realized that the "jail house lawyer" who had prepared his motion had misunderstood his claim, and thus filed a motion to amend his motion to vacate arguing that his claim was that he had been improperly advised to reject an early plea offer, rather than that he had never been informed of the plea offer at all as presented in his original motion. (ECF No. 12). The Government did not file a response to that motion, and this Court granted the motion to amend on July 23, 2015. (ECF No. 15). In that order, the Government was given thirty days in which to file a supplemental answer, but the Government chose not to file a supplement. (*Id.* at 4).

This Court therefore entered an order granting Petitioner an evidentiary hearing on his amended motion to vacate. (ECF No. 18). Petitioner was appointed counsel (ECF No. 21), and an evidentiary hearing was held by this Court on January 27, 2016. (ECF Nos. 23-24). Following the hearing, Petitioner filed a counseled brief in support of his amended motion on February 26,

2016.  (ECF No. 25).  The Government belatedly filed a brief in opposition on May 12, 2016. (ECF No. 26).  Petitioner thereafter filed a reply on June 28, 2016.  (ECF No. 28).

At the evidentiary hearing, this Court heard testimony from two witnesses: Petitioner's plea counsel, Michael Chazen (hereafter "plea counsel" or "Chazen"), and Petitioner himself. (ECF No. 24).  At the hearing, Petitioner first called his former counsel to the stand.  On direct examination, counsel admitted that Petitioner had previously been represented by another attorney, and that, after a proffer session with the Government, he was hired to take over Petitioner's case. (15-17).  Although he could not remember the exact details, counsel also acknowledged that the prior attorney provided him with his notes of the proffer session and that he ultimately received the DEA's reports as to that session.  (*Id.* at 13-19).  Counsel also stated that he reviewed these documents with Petitioner in depth.  (*Id.* at 18-19).  Petitioner also admitted these documents into evidence at the hearing.

The admitted notes reflect that following his April 6, 2010 arrest, Petitioner agreed to meet with the DEA on April 13, 2010, with his original counsel, Henry Furst.  (Hearing Exhibits 1 and 2).  During this proffer session with the DEA, Petitioner signed a proffer agreement wherein his statements during the session would provide information as to Petitioner's activities, but would not be admissible in the Government's case in chief.  (Hearing Exhibit 2 at 1).  In addition to significant information regarding his drug business, Petitioner gave the DEA information regarding his failure to account for the earnings from his drug enterprise in his tax returns. (Hearing Exhibit 2 at 6).  As to that information, the DEA-6 form states as follows: "[Petitioner] also admitted to tax evasion by stating that since the 'inception' of [his pharmacy], he did not declare all of [the pharmacy's] cash earnings, legitimate or otherwise.  [Petitioner] simply explained that he did not declare all of [his] earnings on his income tax returns which he knew to

4

be illegal." (*Id.*).  The DEA-6 went on to recount the details of Petitioner's tax failings, and his use of the money earned from illicit drug sales to pay his various bills, as well as his efforts to hide his ill-gotten gains in safe-deposit boxes and through other enterprises. (*Id.* at 6-7).

Having discussed the proffer with Chazen, Petitioner then questioned Chazen regarding the offered plea.  Chazen confirmed that the crime with which Petitioner was originally charged carried a maximum sentence of twenty years, and that although he could not remember the exact details of how the offer was first made, that he received from the Government a plea offer which would have Petitioner receive a recommended sentence of 135 to 168 months.  (ECF No. 24 at 19-21).  An e-mail exchange was also admitted into evidence at this time which confirmed this offer was made, at least via e-mail, and that Petitioner had discussed it with Chazen.  (Exhibits 3-4). Chazen also confirmed with Petitioner's habeas counsel that he had never received a written formal plea agreement to go along with this offer.  (ECF No. 24 at 22-24).  Chazen then stated that he discussed the offer with Petitioner, but Petitioner found the offered length of sentence unacceptable, and Chazen thus attempted to seek a better plea.  (*Id.* at 25).  Chazen further testified that the Government had not been willing to offer a plea deal that would have permitted an argument for a downward variance.  (*Id.* at 26-27).  Ultimately, Chazen testified that his recommendation to Petitioner had been that "this is a plea offer that should be accepted," but that Chazen did not make a forceful or pressing effort to get Petitioner to agree to this deal.  (*Id.* at 33).

Petitioner then questioned Chazen regarding a lawsuit he filed seeking the return of Petitioner's seized property and money.  (*Id.* at 37).  Chazen testified that he filed a civil action to recover these items based on a statutory argument that the Government had not complied with the required steps for the seizure.  (*Id.* at 37-41).  He further testified that the Government returned an indictment shortly after the filing of that civil action, and that Petitioner was ultimately indicted

on further tax charges via a superseding indictment in August 2011.  (*Id.* at 37-38).  Plea counsel further stated that Petitioner pled guilty via an open plea shortly thereafter.  (*Id.* at 38-39).  Although he did not give a firm answer to the question, Chazen stated that the open plea was preferable to trial at the time, as Petitioner would likely have lost at trial.  (*Id.* at 41).  Chazen further stated that, after the open plea, Petitioner consented to the forfeiture of the seized goods and money as a means for presenting a variance argument.  (*Id.* at 42).  Chazen finally testified that he raised several other variance arguments at sentencing, including an argument as to the disparity of sentence which would result if Petitioner received a lengthy sentence where other pharmacists had not.  (*Id.* at 44-45).

On cross examination, Chazen stated that Petitioner's likelihood of success at trial was "significantly handicapped" in light of Petitioner's statements at the proffer session.  (*Id.* at 46).  Chazen thus stated that trial was never a serious option, and that he and Petitioner had sought to resolve the case through a plea, but that Petitioner was seeking a six or seven year sentence.  (*Id.* at 47).  Chazen further stated on cross examination that he never received a better offer than the 135-168 month offer, and that the PSR ultimately calculated that Petitioner's sentence for his drug conspiracy charge under the Guidelines would have exceeded twenty years had a twenty year statutory maximum sentence not applied.  (*Id.* at 47-50).

Following the conclusion of Chazen's testimony, Petitioner testified at the hearing.  On direct examination, Petitioner stated that, during the DEA proffer session, he admitted to not only the drug conspiracy, but also as to how he used – and did not report – the proceeds from that conspiracy.  (*Id.* at 53-54).  Petitioner further stated that, when he hired Mr. Chazen, he told him about the admissions he had made regarding both drugs and false tax returns.  (*Id.* at 54).  Petitioner further stated that while he discussed trial strategy with Chazen, Chazen never discussed with him

6

his admissions or the potential for tax charges.  (*Id.* at 54-55).   Turning to the offered plea, Petitioner stated that Chazen told him only of what the offered sentence range was in relation to the twenty year maximum, and never discussed with him the specific details.  (*Id.* at 56). According to Petitioner, he and Chazen discussed the plea at length, and both were surprised as to the length of sentence.  (*Id.* at 56-57).  Although Petitioner looked to Chazen for advice, Petitioner contended that Chazen did not give him a strong recommendation as to whether he should or should not accept the plea at first, and that Chazen told him that he could talk with the Government and seek a lower plea, or offer cooperation in aid of lowering the potential sentence.  (*Id.* at 57). Petitioner described Chazen as being passive in these discussions, and not providing strong guidance.  (*Id.* at 58).  Ultimately, Petitioner contended that both agreed that the initial offer should be rejected.  (*Id.*).  As to the civil suit over the seized property, Petitioner contended that it was Chazen, and not he, who insisted on filing the civil suit as a potential bargaining chip in his ongoing attempts to get a better plea.  (*Id.* at 57, 60, 62).

Turning to the potential for non-drug charges, such as the tax charges Petitioner eventually received, Petitioner stated that counsel never told him that he faced other potential charges.  (*Id.* at 61).  Petitioner stated that he "had no idea" the Government could bring further tax or money laundering charges.  (*Id* at 62).  As to his eventual open plea, Petitioner confirmed that, in discussing with him the Rule 11 application, plea counsel had told him that his maximum sentence –for all charges – was the twenty year maximum that applied only to the drug offense.  (*Id.* at 70). Petitioner further testified that Chazen never discussed with him how the tax charges would affect his sentence.  (*Id.* at 71-72).  According to Petitioner, it wasn't until after sentencing that he became aware that he was subject to a sentence greater than twenty years.  (*Id.* at 72).  Ultimately, Petitioner testified that he "absolutely" would have accepted the 135-168 offer if he knew that he was

7

potentially subject to additional tax fraud charges and to a sentence of greater than twenty years. (*Id.* at 73).  On cross examination, Petitioner contended that he believed that Chazen had failed him by not providing him information as to the tax charges and his exposure beyond twenty years, as well as in using the civil action as a bargaining chip.  (*Id.* at 78-79).  Petitioner likewise stated on cross examination that Chazen convinced him that he had other strategies which would produce a better sentence than Petitioner would receive under a plea to the offered deal.  (*Id.* at 80-81).

## II. DISCUSSION

### A. Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence.  Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.  Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure."  *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert. denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

**B.  Credibility Determinations**

Having held an evidentiary hearing in this matter and having had the opportunity to observe the demeanor and testimony of the witnesses at that hearing, this Court makes the following credibility determinations.  This Court found the testimony of Petitioner at the hearing to be credible.  Petitioner's testimony was direct and forthright, and Petitioner was responsive to questioning on both direct and cross examination.  Based on Petitioner's demeanor and responsiveness, this Court finds his testimony to be credible and shall accept it as such.

As to the other witness at the hearing, Petitioner's former defense counsel Michael Chazen, this Court found his testimony less credible.  Mr. Chazen's testimony was frequently subject to long silences and gaps during which Mr. Chazen would think to himself for several minutes before answering even relatively simply questions.  These gaps persisted even when Mr. Chazen was being asked similar or related questions.  Mr. Chazen seemed to either have difficulty remembering some of the details of this case or to be unsure regarding the exact nature of his conversations with Petitioner.  Thus, while this Court will not go so far as to say that Mr. Chazen's testimony was not credible, this Court does find him less credible than Petitioner, and where their testimony disagrees, the Court would be inclined to credit Petitioner over Mr. Chazen.

**C.  Analysis**

**1.  The Government's Objection to Petitioner's Amendment**

Before this Court can address the merits of Petitioner's claims, this Court must first address the Government's objection to Petitioner's amended motion to vacate.  In its belated response to Petitioner's post-hearing brief, the Government argues that Petitioner's current claim, that counsel was deficient in advising him in relation to his guilty plea and especially so in light of admissions

Petitioner made at a proffer session with the Government, does not relate back to Petitioner's original claim that counsel failed to advise him as to an offered plea, and thus Petitioner's amended claims should not be heard by this Court. There are several problems with this assertion by the Government, each of which this Court will address in turn.

First, as this Court has noted, the Government's objection cannot be categorized as anything other than late. Petitioner filed a motion to amend his § 2255 motion on March 24, 2015. (ECF No. 12). The Government chose not to respond to that motion, and this Court granted that motion in July 2015. (ECF No. 15). Despite being given thirty days to respond to the amended motion (ECF No. 15 at 4), the Government again chose not to file a response. The Government then appeared before this Court for the initial hearing date in November 2015, and again the Government did not object to the amendment, instead supporting Petitioner's request for the appointment of counsel. (*See* ECF No. 19-21). It was not until the evidentiary hearing on January 27, 2016, that the Government finally took issue with the amended complaint, asking that Petitioner be required to nail down the exact contours of the claims he was raising, which Petitioner did both through the hearing and through the post-hearing brief Petitioner filed in February 2016. (ECF Nos. 24-25).

The Government did not raise its current, written objection to the amendment until two and a half months later, when the Government belatedly filed its responsive post-hearing brief, arguing that Petitioner's claims did not relate back to his original claims. This argument could have been raised in response to the motion to amend, but was not. It could also have been raised at any time between the granting of that motion in July 2015 and the first hearing the following November, but was not. The Court finds the delay in raising this claim, while perhaps not sufficient to deem the challenge waived, quite troubling. The Government has had ample opportunity to respond to

the amendment before it was granted or in a supplemental answer after the motion was granted, it was the Government's own decision not to act that prevented it from more timely raising this objection, and neither Petitioner nor the Court are responsible for this delay.

In any event, the Government's chief contention in its objection is that Petitioner's current claims do not relate back to his original claim that plea counsel failed to advise him of an offered plea, and thus are untimely. The problem with this objection is that this Court has already held that Petitioner's claim that he was actually advised to reject the plea offer, rather than not advised of its existence, does relate back to Petitioner's original claims. (*See* ECF No. 15). As this Court explained in its prior Order,

> As the Government had already filed its answer before Petitioner filed his motion, Petitioner may only amend his § 2255 motion "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2); *see also United States v. Thomas*, 221 F.3d 430, 434-37 (3d Cir. 2000). Leave of court should "be freely given when justice so requires." *Thomas*, 221 F.3d at 435 (quoting *United States v. Duffus*, 174 F.3d 333, 337 (3d Cir.), *cert. denied*, 528 U.S. 866 (1999)).

> As motions brought pursuant to 28 U.S.C. § 2255 are subject to a one year statute of limitations, an amendment, such as the one Petitioner wishes to make here, raising a new claim after the expiration of the statute of limitations may only be made where that amendment relates back to the original, timely filed motion. *Id.* at 435-37. In the §2255 context, a new claim only relates back to the filing of the original motion where the new claim and the timely raised claims are "tied to a common core of operative facts." *Hodge v. United States*, 554 F.3d 372, 378 (3d Cir. 2009) (quoting *Mayle v. Felix*, 545 U.S. 644, 664 (2005)). Such a common core is not broad enough to encompass the entirety of a Petitioner's trial, conviction, and sentence, but must arise out of a set of facts related in time and place. *See Mayle*, 545 U.S. at 660.

> Although this Court recognizes that Petitioner's proposed amendment is admittedly contradictory to the allegations contained in Petitioner's initial § 2255 motion, the amended claim he wishes to pursue shares a common core of operative facts with Petitioner's original claim in so much as Petitioner continues to claim that his

11

attorney provided ineffective assistance of counsel in relation to an informal plea offer extended by the Government. Petitioner seeks only to alter the alleged facts as to how counsel was ineffective: claiming now that counsel advised him to reject the plea rather than failing to inform him of its existence. This new allegation is related in time and place to the original assertion in so much as it concerns the advice counsel gave during the same time period underlying Petitioner's original assertion: those times during which Petitioner and counsel met while the informal plea offer was available. As such, Petitioner's amended claim would relate back to his § 2255 motion and would therefore not be time barred. *See Mayle*, 545 U.S. at 660; *Hodge*, 554 F.3d at 378. This Court will therefore grant Petitioner's motion to amend his claim.

(ECF No. 15 at 2-3, internal paragraph numbers omitted).

Thus, as this Court has explained, Petitioner's current claims relate back to his original claims, and Petitioner's request to amend his motion to raise that claim has already been granted. The Government is essentially attempting to relitigate a motion it chose to ignore, which is impermissible. To the extent that the Government is attempting to assert that Petitioner's habeas counsel should have filed yet another motion to amend because he and Petitioner developed the factual underpinnings of that claim at the evidentiary hearing following discussion of Petitioner's case, requiring such a formalistic approach would serve no purpose, especially in light of the fact that a post-hearing brief was filed. Petitioner's current claims are simply more developed versions of those raised in his amended motion to vacate, which is exactly what is to be expected when counsel is appointed to aid a pro se petitioner in asserting his claims in an evidentiary hearing. In any event, these claims would certainly relate back to the amended motion, which in turn this Court has held related back to Petitioner's original motion in so much as they derive from a common core of operative facts, and thus the Government's objection would need to be denied even were this Court to accept their overly formalistic approach. The Government's objection is thus denied,

and this Court will address Petitioner's claim on the merits.  *See Mayle*, 545 U.S. at 660; *Hodge*, 554 F.3d at 378; *Thomas*, 221 F.3d at 435; *Duffus*, 174 F.3d at 337.

**2.  Petitioner's Ineffective Assistance of Counsel Claim**

In his amended motion to vacate sentence and through his evidentiary hearing, Petitioner has essentially asserted a single claim: that his former counsel, Michael Chazen, was constitutionally ineffective in advising him in relation to a plea offered by the Government, and that he was prejudiced as a result by receiving a significantly harsher punishment and additional convictions that he would not have received absent that deficient advice.  The Third Circuit has provided the following guidance in dealing with such claims:

> In *Strickland v. Washington*, [466 U.S. 668] (1984), the Supreme Court established a two-part test to evaluate ineffective assistance of counsel claims.  The first part of the Strickland test requires "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  [*Id.* at 687] (internal citations omitted).  The second part specifies that the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  [*Id.* at 694].  We have reasoned that "there can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."  *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

> The year after deciding Strickland, the Supreme Court slightly modified the prejudice prong of the Strickland test in connection with guilty pleas.  *See Hill v. Lockhart*, [474 U.S. 52] (1985).  "In order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  [*Id.* at 59] (internal quotations omitted).  The Court has re-emphasized that "[d]efendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process."  *Lafler v. Cooper*, --- U.S. ---, 132 S.Ct. 1376, 1384[] (2012).

> When addressing a guilty plea, counsel is required to give a defendant enough information " 'to make a reasonably informed decision whether to accept a plea offer.'" *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)), *cert. denied*, --- U.S. ---, 134 S.Ct. 1340[] (2014). We have identified potential sentencing exposure as an important factor in the decisionmaking process, stating that "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *Day*, 969 F.2d at 43. In order to provide this necessary advice, counsel is required "to know the Guidelines and the relevant Circuit precedent...." *United States v. Smack*, 347 F.3d 533, 538 (3d Cir. 2003).

*United States v. Bui*, 795 F.3d 363, 366-67 (3d Cir. 2015).

Where a petitioner can show that his counsel performed deficiently in advising him as to a plea deal, he must still show that he was prejudiced by that failing by showing that "but for his counsel's advice, he would have accepted the plea and that [the plea] agreement would have result[ed] in a lesser sentence." *Rickard v. United States*, No. 10-4089, 2011 WL 3610413, at *8 (D.N.J. Aug. 16, 2011); *accord Lafler v. Cooper*, --- U.S. ---, ---, 132 S. Ct. 1376, 1384-85 (2012) (prejudice in this context requires a petition to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [which i]n the context of pleas [requires] a [petitioner] show the outcome of the plea process would have been different with competent advice"). Thus, a showing of prejudice in this context requires that the petitioner establish that he would have accepted the offered plea had he been given adequate advice, that the deal would not have been withdrawn by the Government, that the Court would have accepted the plea, and that the sentence received would ultimately have been less severe than that the petitioner did receive. *Lafler*, 132 S. Ct. at 1385.

Turning first to the prejudice prong, it is clear that Petitioner, to the extent plea counsel was deficient, received a sentence significantly harsher than that entertained by the offered plea

agreement.  The agreement initially offered by the Government in this case called for Petitioner to receive a sentence on his drug charges of 135-168 months.  Petitioner, at sentencing, on his drug charge alone received a sentence of 240 months.  Petitioner likewise ultimately openly pled guilty to a superseding indictment including numerous tax charges, for which he ultimately received another sixty consecutive months.  Thus, it is clear that the sentence that Petitioner ultimately received was significantly harsher than that which was offered, even if this Court were to consider the drug charge alone.  Because nothing in the record suggests that the Government would have withdrawn the plea had Petitioner timely accepted, nor that this Court would not have accepted the plea deal, this Court finds that Petitioner has established that he suffered prejudice as a result of counsel's allegedly deficient performance.  *Id.*

Thus, the only question remaining is whether Chazen's advice regarding the proposed plea deal was deficient.  Essentially, Petitioner contends that plea counsel was deficient because he failed to give Petitioner a recommendation that he should accept the offered deal, and he never discussed with Petitioner the potential for the filing of additional charges, including tax charges, based on the information provided during the proffer session.  Having heard the testimony of the witnesses and having made the credibility determinations discussed above, this Court credits Petitioner's assertions that plea counsel, in giving advice as to the plea agreement, was passive and did not clearly advise him to accept the offered plea.  Indeed, plea counsel himself acknowledged that he did not press Petitioner or strongly advise him to accept the deal, and stated only that he found it acceptable and that he attempted to communicate to Petitioner that he should accept the deal.  This Court also credits and accepts Petitioner's testimony that plea counsel never discussed with him the possibility of additional tax charges, and that Chazen did not discuss with him the added sentencing exposure which he faced absent a plea to the initial offer.  Based on these

15

findings, this Court concludes that plea counsel failed to provide Petitioner with sufficient information as to the comparative sentencing exposure Petitioner would face if he rejected the 135-168 months plea offer, and thus provided deficient advice to Petitioner. *Bui*, 795 F.3d 366-67. As counsel was deficient, and because Petitioner clearly suffered prejudice as a result, Petitioner has established ineffective assistance of counsel. Thus, the motion to vacate sentence is hereby granted.

In its response to Petitioner's post-hearing brief, the Government argues that this Court should reject the argument that counsel failed to provide Petitioner with information as to potential additional charges and their effect on Petitioner's sentence because any such advice was entirely speculative. What the Government's argument ignores, however, is that this is not a case wherein any great deal of additional investigation was required to conclude that Petitioner could be indicted on additional charges. As both Petitioner and the DEA-6 form agree, Petitioner, during his proffer session, directly admitted to the Government that he had engaged in tax evasion and did not disclose all of his legitimate earnings to the IRS, let alone the proceeds of his drug conspiracy. Thus, even though the Government may not have been able to use the proffer in its case in chief, Petitioner had essentially provided a bread crumb trail for the Government to follow in pursuing tax charges, and the Government had only to follow that trail to the relevant tax filings to make a case against Petitioner based on his proffer. While the tax charges may not have been a foregone conlcusion after the proffer, it should have been clear to counsel that the Government had more than sufficient information to bring those tax charges if the Government so chose, and a failure to discuss the effect those charges would have would leave Petitioner with inadequate information on which to choose to reject the offered plea agreement or effectively weigh his comparative sentencing exposure. This is especially true in light of the relatively "passive" advice plea counsel

apparently provided to Petitioner which led Petitioner to believe that counsel thought it best to reject the offered agreement.  Thus, the Government's argument is unavailing, and this Court conlcudes that Petitioner suffered ineffective assistance of counsel.  *Bui*, 795 F.3d 366-67.

Having concluded that Petitioner suffered ineffective assistnace of counsel, this Court must determine the appropriate remedy.  As the Court explained in *Lafler*, "Sixth Amendment remedies should be 'tailored to the injury suffered from the constitutonal violation and should not unnecessarilly infringe on competing interests.'"  132 S. Ct. at 1388 (quoting *United States v. Morrison*, 449 U.S. 361, 364 (1981)).  The remedy must therefore "neutralize the taint" of the constitutional violation, but may not result in a windfall to the petitioner or "needlessly squander" the Government's prosecutorial resources.  *Id.*; *see also Mechanik v. United States*, 475 U.S. 66, 72 (1986) (noting that reversal of a conviction places substantial costs and burdens on the Government and should be avoided where unnecessary to neutralize the taint of a constitutional violation).  Thus, the *Lafler* Court noted that there are two potential injuries which can arise from a criminal defendant's ill-advised refusal of a guilty plea – either that he received a harsher sentence than he otherwise would have, or that he suffered consequences other than a greater sentence which might include situations where a defendant is convicted of more serious or numerous offenses than those to which he would have pled guilty under the plea agreement.  132 S. Ct. at 1389.  In the first situation, the standard remedy would be a resentencing wherein the petitioner could receive a sentence equal to that "offered in the plea, the sentence he received at trial, or something in between."  *Id.*  In the second situation, a court must instead fashion a redress which deals with the additional harm suffered by the refusal to plead guilty under the offered plea deal.  *Id.*  In such circumstancs, the Court offered that it may be appropriate to require the

Government to reoffer the plea in question, and to address Petitioner's convictions accordingly, possibly including the vacation of certain convictions as well as resentencing.  *Id.*

In this matter, it is clear that Petitioner falls into the latter camp as he ultimately pled guilty to not only the drug conspiracy to which he would  have pled under the plea agreement, but also to several tax charges which had not been implemented at the time of the rejected plea offer. Problematically, however, as there was no formal written plea agreement in this matter, but only an initial offering of a proposed plea deal for the drug conspiracy, there is no concrete plea deal which the Government could be required to reoffer to Petitioner, and, arguably, to permit Petitioner to receive the benefit of a sentence of 135-168 months alone with a corresponding vacatig of his tax charges, about which the offered deal was silent, would constitute a windfall to Petitioner. Thus, the Court must fashion a remedy which addresses the wrong at issue, the harsher sentence and conviction Petitioner received by refusing the offered plea based on plea counsel's inadequate advice, while not permiting Petitioner to receive a windfall or force the Government to expend prosecutorial resources unnecessarily.

In his post-hearing reply brief, Petitioner suggests that this Court "hold a new sentencing hearing in which it treats [Petitioner's] Conspiracy count as an offense level 33 under the Guidelines, which would warrant a sentence consistent with the original plea offer of 135-168 months" as to the drug conspriacy charge.  (ECF No. 28 at 8).  Petitioner further suggests that this court not vacate his guilty plea as to the tax counts, but instead "permit [habeas counsel] to argue at [a] new sentencing hearing for the imposition of <u>concurrent</u> terms on those counts" as opposed to the consecutive sentences he received in his original sentencing.  (*Id.*).  Petitioner's current counsel suggests that this remedy would address the constitutional violation at hand, while saving prosecutorial and judicial resources by preventing the Government from having to re-prosecute

18

Petitioner on the tax charges.  This Court agrees that this would be an appropriate remedy which would strike a balance between neutralizing the taint suffered as a result of plea counsel's ineffective assistance and preventing a windfall to Petitioner, while preserving prosecutorial resources.  As such, this Court will grant Petitioner's request and will resentence Petitioner accordingly.

## IV.  CONCLUSION

For the foregoing reasons, this Court will grant the motion to vacate sentence and will resentence Petitioner.  At that resentencing, Petitioner shall be sentenced on his drug conspiracy count as if he had been subject to a plea agreement with a suggested guidelines level of 33 resulting in a suggested Guidelines sentencing range of 135 to 168 months, and Petitioner's habeas counsel and the Government shall be free at the resentencing to argue as to whether Petitioner's sentence on the tax counts should run concurrently or consecutively both to each other and to Petitioner's new sentence on the drug conspiracy charge.  An appropriate order follows.

Dated: July 14, 2016                         *s/ Susan D. Wigenton*
                                             Hon. Susan D. Wigenton,
                                             United States District Judge

19